NO. 07-07-0298-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 25, 2008
_____

DERRICK GUTIERREZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-DC-05-500141; HONORABLE JULIE KOCUREK, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Derrick Gutierrez, appeals his conviction for the offense of injury to a child and sentence of 18 years incarceration in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

Background

Appellant's five month old son died on March 4, 2006, while being watched by appellant. Appellant called 911 for medical assistance for his son. When police arrived

at the scene, Travis County Deputy Sheriff Mitch White said that he smelled a strong odor of marijuana in the house. Appellant's son was treated at the scene by emergency medical technicians and was ultimately taken to the hospital for further medical treatment. Three days after the child was admitted into the hospital, he died.

Medical examination of the child revealed symptoms consistent with shaken baby syndrome. As a result of this assessment, Travis County Sergeant Doug Teague interviewed appellant at the hospital regarding the circumstances leading to the 911 call. Appellant told Teague that the baby began to spit up his formula and that he was gagging and turning red, like he was choking. Appellant told Teague that he began to shake the baby in an attempt to wake the baby up. An autopsy was performed on the body of the child by Travis County Deputy Medical Examiner, Elizabeth Peacock. The autopsy report concluded that the cause of the child's death was "cranio-cerebral trauma."

Appellant was subsequently indicted by the grand jury for the offenses of capital murder and injury to a child. At trial, the State offered expert testimony that the injuries suffered by appellant's son were not consistent with gentle shaking, but were rather consistent with violent shaking or impact with an unknown surface. The jury acquitted appellant of capital murder, rejected the lesser-included offense of recklessly causing injury to a child, and convicted appellant of intentionally or knowingly causing injury to a child.

During the punishment phase of trial, the State presented evidence that appellant had been arrested for possession of cocaine approximately two and a half years before the injury to a child incident occurred. Appellant then presented evidence that he had been

2

allowed to participate in a pre-trial diversionary program, called the SHORT program. Through the social service program coordinator for the SHORT program, Corrine Hernandez, appellant presented evidence of what was required to successfully complete the SHORT program and that he had successfully completed the program. Among the requirements of the SHORT program that were specifically addressed was that participants must submit to random urinalysis tests and have a certain number of negative urinalysis test results. Prior to taking Hernandez on cross-examination, the State approached the bench and arguments were presented regarding whether evidence of appellant's failed urinalysis tests while participating in the SHORT program could be admitted. The State argued that appellant had opened the door to this evidence by presenting evidence of the requirements of the SHORT program and that appellant had successfully completed the program. Appellant objected because the urinalysis tests were only presumptive tests that do not have the "forensic value" to be proven beyond a reasonable doubt. The trial court overruled appellant's objection stating that the jury could find that appellant presumptively tested positive beyond a reasonable doubt and that the probative value of the evidence outweighs the prejudicial effect. Following this ruling, the State elicited testimony from Hernandez that appellant had failed seven urinalysis tests during his participation in the SHORT program. Appellant then rehabilitated the witness by eliciting testimony that appellant's failed urinalysis tests had all been from early in his participation in the program and that certain drugs can stay in a person's system for an extended amount of time. At the conclusion of punishment, appellant was sentenced to 18 years incarceration.

3

By one issue, appellant contends that the trial court erred in admitting evidence that appellant failed urinalysis tests during the punishment phase of trial because there was no predicate presented to establish the accuracy and reliability of the tests to prove actual drug use.

Law and Analysis

A trial court's decision to admit evidence is reviewed under an abuse of discretion standard. Allen v. State, 108 S.W.3d 281, 284 (Tex.Crim.App. 2003). A reviewing court should not reverse a trial judge's decision whose ruling is within the zone of reasonable disagreement. Green v. State, 934 S.W.2d 92, 102 (Tex.Crim.App. 1996). A trial court's ruling on admissibility should not be disturbed simply because the appellate court might have decided a question differently. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g). If evidence is admissible for any purpose, the trial court's action in admitting it is not error, regardless of the reason given by the trial court for admitting the evidence. Sewell v. State, 629 S.W.2d 42, 45 (Tex.Crim.App. 1982).

During the punishment phase of a criminal trial, the State may offer into evidence any matter the trial court deems relevant to sentencing. See TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2006). Such "bad acts" evidence may include the defendant's prior criminal record, his general reputation, his character, or circumstances of the offense for which he is being tried. Id. However, such "bad acts" evidence must be proven to be attributable to the defendant beyond a reasonable doubt. Id.; Haley v. State, 173 S.W.3d 510, 515 (Tex.Crim.App. 2005). Whether an extraneous offense or bad act

4

was established to be attributable to the defendant beyond a reasonable doubt is a question of fact for the jury as opposed to the preliminary question of admissibility for the trial court. Mitchell v. State, 931 S.W.2d 950, 953 (Tex.Crim.App. 1996); Nanez v. State, 179 S.W.3d 149, 151-52 (Tex.App.–Amarillo 2005, no pet.). The use of extraneous offenses during the punishment phase is analogous to that of the guilt-innocence phase of a trial in regard to the burden of proof. Mitchell, 931 S.W.2d at 954. When evidence of an extraneous offense has been offered, regardless of the respective phase of the trial, the law requires that it be proved beyond a reasonable doubt that the defendant committed the extraneous offense or is, at least, criminally responsible for its commission. Id. When the evidence of an extraneous offense or bad act is legally insufficient to allow a rational trier of fact to find that the defendant committed the offense or act beyond a reasonable doubt, a preliminary determination that the evidence is admissible is an abuse of discretion. See Stewart v. State, 927 S.W.2d 205, 208 (Tex.App.–Fort Worth 1996, writ ref'd).

In the present case, Hernandez testified that she was not employed with the SHORT program at the time that appellant was in the program. Her testimony made clear that all of her information on appellant's performance in the program was based on the reports in the SHORT program's file. Specifically, Hernandez's testimony regarding appellant's urinalysis results was that appellant tested positive seven times, but that each of these positive tests were at the beginning of his participation in the SHORT program. In addition, Hernandez testified that appellant also tested positive for Xanax once. Hernandez is not an expert in drug testing. She did not testify about the method utilized to perform the urinalysis tests on appellant. In fact, nothing in the record would support the reliability of

5

the results of the urinalysis tests performed while appellant was participating in the SHORT program. Because the evidence was legally insufficient to allow the jury to find that appellant had actually used drugs while he was participating in the SHORT program, the trial court abused its discretion in admitting this evidence over appellant's objection to the reliability of the urinalysis test results. Stewart, 927 S.W.2d at 208. See also Hernandez v. State, 55 S.W.3d 701, 705-06 (Tex.App.–Corpus Christi 2001), aff'd by 116 S.W.3d 26 (Tex.Crim.App. 2003) (admission of drug testing results not shown to be reliable is inadmissible over timely objection); Philpot v. State, 897 S.W.2d 848, 852 (Tex.App.–Dallas 1995, writ ref'd) (same).

However, even after finding that the trial court erred in admitting the extraneous offense evidence, we must determine the effect of the erroneous admission. Error in the admission of evidence of an extraneous offense constitutes nonconstitutional error that is subject to harm analysis. Boyd v. State, 899 S.W.2d 371, 375-76 (Tex.App.–Houston [14th Dist.] 1995, no writ). We are to disregard nonconstitutional error that does not affect the substantial rights of the defendant. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. Russell v. State, 113 S.W.3d 530, 549 (Tex.App.–Fort Worth 2003, pet. ref'd) (citing King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997)).

In determining whether error had a substantial and injurious effect or influence on the verdict, we must review the error in relation to the entire proceeding. King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 2007); Haley, 173 S.W.3d at 518. The process for assessing harm due to the erroneous admission of evidence is to isolate the error and all

6

of its effects and ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. Christopher v. State, 851 S.W.2d 318, 320 (Tex.App.–Dallas 1993, writ ref'd). However, if overwhelming evidence dissipates the error's effect upon the jury's function to the extent that the error did not contribute to the verdict, then the error is harmless. Id.

Looking at the entire punishment proceeding, we conclude that the evidence of appellant's failed urinalysis tests had no influence or, at worst, only a slight influence on the jury's verdict. The testimony of Hernandez regarding appellant's failed urinalysis tests was brief, it was offered only in rebuttal to show that appellant had some noncompliance issues before successfully completing the SHORT program, and the trial court properly instructed the jury that they could only consider the evidence of an extraneous offense if they were satisfied beyond a reasonable doubt that appellant committed or was criminally responsible for the acts. Additionally, the State made no further reference to appellant's failed urinalysis tests. In fact, the most logical inference to be drawn from the evidence of appellant's failed urinalysis tests, when viewed in context of the entire record of the punishment proceeding, is that appellant had some compliance issues when he began the SHORT program, but that he became compliant through the course of the program and was able to successfully complete the program. Hernandez testified that the final note in appellant's file stated that he tested "negative on the pre-graduation UA [urinalysis]. He's done a good job in the program." Viewing the entire punishment proceeding, we cannot say that the erroneously admitted evidence of appellant's failed urinalysis tests had a

substantial and injurious effect on the jury's verdict and, therefore, we conclude that the error was harmless.

Conclusion

Having found the trial court's erroneous admission of evidence to be harmless, we affirm the judgment.

Mackey K. Hancock
Justice

Do not publish.